[Civ. No. 2059.  Fourth Appellate District.—May 27, 1939.]

JOSEPHINE MARGELLINI, Respondent, v. PACIFIC AUTOMOBILE INSURANCE COMPANY (a Corporation), Appellant.

Stanford & Yale and R. E. Jenson for Appellant.

Stickney & Stickney and Edward Strop for Respondent.

BARNARD, P. J.—This is an action against an insurer upon a public liability and property damage policy containing the provision that "in case final judgment is secured against the assured, the claimant may maintain an action against the company on this policy, subject, however, to its terms and limitations, to recover on said judgment". (See Stats. 1919, p. 776.)

The policy, issued to one Frank Levar, provided that its terms should inure to the benefit of any person operating the automobile described therein with the permission of the assured. It also contained a paragraph headed "ACCIDENT AND SUIT NOTICE AND COOPERATION", providing that the assured should give immediate written notice of any accident "with the fullest information obtainable, including names and addresses of witnesses"; that he should give like notice of any claim made; that in case suit was brought he should immediately forward any summons or process served upon him; and that, when requested, he should "aid in effecting a settlement, in obtaining evidence, in procuring the attendance of witnesses . . . and shall fully cooperate with the company at all times, except in a pecuniary way, in the defense of any suit brought". It was further provided that each of these duties "is a condition subsequent".

The plaintiff was injured in a collision between an automobile owned and driven by her and the automobile described in the policy, which was then being driven by Patricia Levar, the wife of Frank Levar. In an action against the Levars, in which they defaulted, the plaintiff secured a judgment for $3,190. She then brought this action, in which a jury returned a verdict in her favor for a like amount, and the defendant has appealed from the judgment which followed.

The appellant contends that the undisputed evidence discloses such a breach of the terms of the policy on the part of the assured as will prevent a recovery by the respondent, and that the court erred in instructing the jury that any failure on the part of the assureds to comply with the "conditions" of the policy concerning notice, forwarding of summons, and cooperation, was not a defense unless the appellant was "damaged thereby".

The facts are practically undisputed and are as follows: The accident happened on July 13, 1935. Shortly after the collision a police officer took Mrs. Levar into custody as being intoxicated, although the charge actually lodged against her was one of reckless driving. The same day an attorney named Breeden interviewed her at the jail and two days later he inquired of the American National Underwriters, whose stamp appeared upon the policy, whether the policy

made any provision for bail in case of an arrest, telling them where the accident had occurred but giving them no other facts concerning the same. This firm was not authorized to write policies but had been authorized by appellant's local agent to take and forward to him reports of accidents.

On July 16, 1935, Breeden appeared in police court with Mrs. Levar and the case was continued to July 24th, Mrs. Levar being released on her own recognizance. Mrs. Levar did not appear for trial on July 24th nor on August 1st, to which date the case was continued, and Breeden testified at the trial of the instant case that he had not seen her since July 17, 1935. He further testified that on July 16th, while he and Mrs. Levar were in court, an insurance man, whom he believed was a certain Moran who was employed by the Le Barron Company, which company acted as an adjuster for the appellant, came to him and asked about the accident although he did not believe that he talked with Mrs. Levar. His identification of Moran was not positive. Moran testified that he never heard of the matter until July 23, 1935, and that he was not in court until July 24th. On that date he told Breeden that he had located a witness who would testify that Mrs. Levar was not at fault in the accident but that the fault was that of Mrs. Margellini, the present respondent, and that there would be other witnesses who would testify to the same effect.

Meanwhile, on July 20, 1935, Edgar G. Langford, then acting as attorney for Mrs. Margellini, wrote to the American National Underwriters to the effect that he was instructed to file suit for damages, but would be glad to discuss a settlement. This letter reached the hands of the appellant's resident agent within a day or two, and was turned over to the Le Barron Company for attention and referred by it to Moran. The Le Barron Company started an investigation, interviewing residents in the neighborhood where the accident occurred, causing the respondent to be examined by a physician and looking into the damage done to her automobile. On July 25, 1935, the Le Barron Company wrote to the appellant stating that its local agent had dispatched repeated communications to the address given by Mrs. Levar with the request that she submit the necessary report as required by the policy, but that she had not responded to such requests; that an investigator had called at the address given by Mrs. Levar and was informed that she had un-

doubtedly left the city in view of the fact that at the time of the accident she was already under a six months' suspended commitment by the local police court; and that when the case in the police court was continued to August 1st, they had gone to Mrs. Levar's home and informed her friends of this continuance and again urged them to use every effort to contact Mrs. Levar and direct her to get in touch with their office. On August 1, 1935, the Le Barron Company again wrote the appellant reporting that Mrs. Levar had failed to appear in the police court; that the court had ordered a bench warrant issued for her; and that they had informed respondent's attorney, Mr. Langford, that they had made every possible effort to contact Mrs. Levar without success, and requested him to immediately communicate with them in the event he secured any information as to her whereabouts. On August 9, 1935, the Le Barron Company wrote another letter to the appellant reviewing its unsuccessful efforts to locate or get a statement from Mrs. Levar, stating that Mr. Langford, repondent's attorney, had offered to settle her claims for $2,000, and saying any further information from the attorney or from the assured would be at once reported.

On August 1, 1935, the Le Barron Company sent registered letters to Mr. and Mrs. Levar requesting a report of the accident in accordance with the terms of the policy, and stating that a claim had been made upon them by the injured party, that without a report from Mrs. Levar they could not proceed with the matter, and that in the absence of cooperation from the assured the company would not defend any action nor pay any claim arising from the accident. The letter addressed to Mrs. Levar was returned as undeliverable. Mr. Levar answered from San Francisco under date of August 9, 1935, saying that he knew nothing other than the fact that there had been a collision, that he would be in San Diego about August 24th, and that he would know more about it at that time. Mr. Levar appeared at the Le Barron Company's office on August 22d, and stated that he had been away when the accident occurred and knew nothing about it. He was told that they would proceed with the investigation and do what was necessary to protect his interest if he would get Mrs. Levar to tell them what had occurred. He replied that he would try to do this but no report was ever received from Mrs. Levar and he never

returned. Nothing further was heard from the Levars until September 20, 1936, when they forwarded to the appellant summons and complaint in the action brought against them by the respondent, which had been served upon them on June 17, 1936. Some time in July, 1936, Mr. Langford had informed the Le Barron Company that such service had been made. The papers were returned to the Levars by the appellant with a refusal to assume any obligation under the policy.

The only conflict is with respect to whether a representative of the Le Barron Company saw Mrs. Levar in court on July 16, 1935. The respondent argues that such a representative saw her then and could have obtained a statement from her if one was desired. Mr. Breeden was not positive as to the identity of the man who talked to him at that time but if we assume that this was Moran no claim had then been made, and the duty of reporting the accident and furnishing information concerning the same then rested upon Mrs. Levar and her husband. Moreover, even if any opportunity to obtain a statement from her was presented during this court appearance, it was not to be anticipated that she would thereafter not only fail to make a report but actually conceal herself. We think this conflict in the evidence is immaterial and that the appellant did not waive the provisions of the policy in question by failing to demand a statement from Mrs. Levar on July 16th if, in fact, any such opportunity existed.

Not only was there a failure here to make the reports required under the terms of the policy, but there was a violation on the part of the assured of the cooperation clause contained therein which we think brings this case within the principles of the recent case of *Valladao* v. *Fireman's Fund Indemnity Co.*, 13 Cal. (2d) 322 [89 Pac. (2d) 643], and which bars a recovery on the part of the respondent. In that case it was pointed out that it is now definitely settled in this state that in an action of this character the injured person stands in no better position than the assured with respect to the effect of a violation, on the part of the latter, of a cooperation clause in the policy; that a condition of a policy requiring the cooperation and assistance of the assured in opposing a claim made, or an action brought, by an injured party is material to the risk and of the utmost

practical importance; that without such cooperation and assistance the insurer is severely handicapped and may be precluded from making any defense; and that the insurer is entitled to know from its assured the true facts concerning the accident, in order that it may determine for itself whether to contest or attempt to settle the claim.

In that case, the court said: ''Our examination of many authorities indicates the general rule to be that under a cooperation clause the assured is required to give a fair and frank disclosure of information reasonably demanded by the insurer to enable it to determine whether there is a genuine defense.'' After stating that the question of whether or not an assured has cooperated within the meaning of the policy is ordinarily one of fact, the court held that the issue became one of law where, as in that case, the evidence on the subject is not materially in dispute and it appears without conflict that the assured had repeatedly and wilfully misrepresented to the insurer, over a period of five months, the actual conditions prevailing at the time of the accident with respect to the identity of the driver of the car. It was held unnecessary to decide the question as to whether an insurer must make a showing of prejudice resulting from the breach of a cooperation clause since, in any event, prejudice sufficiently appeared in that case. It was then held that, as a matter of law, prejudice must be presumed where the uncontradicted evidence disclosed a wilful and substantial breach by the assured of the cooperation clause of the policy, in that material facts had been repeatedly and wilfully misrepresented to the insurer over a considerable period. The court further said: ''Nor do we think that preliminary reports of the insurer's investigators tending to indicate a possible lack of defense on the merits to an injured person's claim, precludes the insurer from availing itself of a defense based on a substantial breach of the cooperation clause. We are not now in a position to conjecture as to what settlement or defense on the merits the insurer may have worked out had it been originally fully and truthfully advised by the assured and had it not been forced to withdraw because of its assured's false statements.''

While the facts are slightly different, we are unable to see any difference in principle between that case and the instant case. Under the terms of the policy here in question Mrs.

Levar became one of the assured. It became her duty, as well as that of her husband, not only to report the accident but to cooperate with the appellant by making a fair and frank disclosure of such information as they possessed concerning the facts in connection with the accident. It appears without contradiction that that duty was not performed. Where an insurer is deprived of the benefit of such material information there is no difference in principle whether this results from a wilful misstatement of the facts or from a wilful failure to give any facts at all, accompanied by such a concealment or hiding out as thwarts the repeated and prolonged efforts of the insurer to locate the assured and to obtain the desired information.

Nor can it be said, under such circumstances, that there remains a question of fact as to whether the appellant was prejudiced. No prejudice may have resulted from the mere failure to make a written report as called for by the policy, since the appellant learned of the injured party's claim within about a week and began an investigation. But that investigation must necessarily have been hampered, and could not possibly have been complete, without such information as Mrs. Levar could and should have furnished. If she was intoxicated at the time of the accident, that fact does not, as respondent suggests, conclusively show that no defense existed and that no prejudice resulted. A violation of that, or any, provision of the Vehicle Code, on the part of Mrs. Levar, may not have been the proximate cause of the accident. If it be assumed that any information which could have been furnished, in response to the appellant's request, would have disclosed or led to the discovery of the fact that no defense existed, that very fact would have shown the desirability of settling the claim. The then attorney for the respondent had offered to take $2,000 in settlement, and it is entirely possible that an even better settlement might have been obtained. In our opinion, prejudice sufficiently appears from the uncontradicted facts of this case, and again it is not necessary to decide whether, in a case of this character, an insurer must affirmatively show that prejudice has resulted from the breach of a cooperation clause. Under these circumstances it must be said here, as in the Valladao case, that "as a matter of law prejudice must be presumed (if prejudice be essential to the insurer's defense) from the sub-

stantial and willful breach by the assured of the material cooperation clause of the policy.''

For the reasons given the judgment is reversed with directions to enter a judgment in favor of the appellant.

Marks, J., and Griffin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 19, 1939, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 24, 1939. Curtis, J., and Edmonds, J., voted for a hearing.