[Civ. No. 23584.   First Dist., Div. Two.   July 24, 1967.]

ALLSTATE INSURANCE COMPANY, Plaintiff, Cross-defendant and Respondent, v. CHARLES L. KING, Defendant, Cross-complainant and Appellant.

Richard D. Sanders, James E. Scott and Stanley K. Dodson for Defendant, Cross-complainant and Appellant.

Bennett & Van De Poel, Bryant M. Bennett and Richard C. Logan for Plaintiff, Cross-defendant, and Respondent.

AGEE, J.—King filed a personal injury action in Contra Costa County against Frazier, which arose out of a collision between a motorcycle operated by King and a pickup truck operated by Frazier.

Allstate Insurance Company had issued a liability insurance policy covering the truck and retained attorney Kitchel to defend the action.

Frazier failed to appear at the trial and the jury returned a verdict in favor of King. Allstate filed the instant declaratory relief action to determine its obligations under the policy. The action went to trial against King alone and resulted in a judgment in favor of Allstate, from which King has appealed.

Allstate's contention is that Frazier's failure to appear at the trial is a breach of the clause in the policy titled "ASSISTANCE AND COOPERATION OF THE INSURED," and that such breach caused it to be substantially prejudiced in the defense of the personal injury action.

This clause provides: "The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits."

### Facts

King's personal injury action was filed on May 3, 1962. On June 15, 1962 Allstate sent a letter to Frazier, addressed to 3055 Dundee Court, Concord, California. Therein Allstate acknowledged receipt of the King suit papers forwarded by Frazier and informed him that the action would be defended by attorney Woodrow W. Kitchel, 17th Floor, Tribune Tower, Oakland 12, California.

The letter contained the following paragraph: "Our records show the above is the address at which we can locate you promptly. If you move or will be away from this address, please notify this office exactly where you may be reached, so that we or the attorney can contact you promptly with respect to any part of the lawsuit which may require your personal attention, including date and place of trial. We want to be sure that you know the terms of your policy require your cooperation in attending any court hearing and in giving evidence. For this reason you, as well as the company, will want to be sure that you can be located at any time."

On June 20, 1962 Kitchel wrote to Frazier at the above Concord address, telling him that an answer to the King complaint had been filed and enclosed a self-addressed post card for Frazier to fill out and return. On June 22, 1962 Frazier mailed back to Kitchel the post card filled out as to home and business addresses and their respective telephone numbers.

On July 26, 1962 the attorney for King took the deposition of Frazier at the law offices of attorney Kitchel. Frazier had a conference with Kitchel prior to the taking of such deposition and Kitchel was present at the deposition proceedings as

Frazier's attorney. In the deposition Frazier gave his home address as 3055 Dundee Court, Concord.

About one week later, Frazier and Kitchel had a telephone conversation, the subject matter of which does not appear in the record. This is the *last direct contact* that either Kitchel or Allstate had with Frazier.

On December 24, 1962 Kitchel wrote a letter to Frazier, addressed to 3055 Dundee Court, Concord, advising him that his case had been set for trial for April 8, 1963, at 10 a.m. The letter requested Frazier to "mark this time and date on your calendar" and, "[a]bout one week before the above mentioned date, kindly give me a call at TEmplebar 2-8506 [Kitchel's office phone number] and we will make the final arrangements for the trial."

A self-addressed post card was enclosed in the letter, asking Frazier to advise of any change of address or phone number or place of business. Since the letter was not returned Kitchel assumed that it had been received by Frazier and, since the post card was not returned, that Frazier's home address, telephone number, and place of business had not been changed.

Not having heard from Frazier within the week prior to April 8, as requested in his letter of December 24, Kitchel sent him a telegram stating: "Trial going on Monday. Call me immediately at Templebar 2-8506." (April 8, 1963 was a Monday.) He received no response.

Allstate became aware by this time that Frazier was going to be hard to locate. On April 8 it notified Kitchel as follows: "Frazier not around these parts. Separated from his wife. Bill collectors after him. Will need more time to find him." The trial date was thereupon continued to June 4, 1963.

Allstate immediately assigned adjustor Cady to the task of locating Frazier. He first went to 3055 Dundee Court. There was no one there. From neighbors he learned that Frazier had closed his business and that his wife had left. Frazier's former business partner told him that he did not know where Frazier had gone. None of the neighbors could furnish a lead as to where Frazier might be found.

Cady called the local labor union and talked to a number of people who knew Frazier, but none of them knew his whereabouts. Cady attempted to locate Frazier's wife but was unsuccessful.

Cady obtained a Walnut Creek post office box address for Frazier from Western Union and several registered letters to Frazier were sent to that address but came back unclaimed.

One of these, dated April 22, 1963, was sent to the Walnut Creek address, advising Frazier of the new trial date, June 4, 1963, and asking Frazier to get in touch with him. When this letter was returned it was re-sent to the Dundee Court address. It was returned with the notation that the addressee had moved and left no forwarding address.

On June 15, 1963, three similar letters were sent to Frazier, one to the Dundee Court address, a second to the Walnut Creek post office box address and a third to him at his former place of business. The first two were returned with a notation indicating the addressee had moved and left no forwarding address and the third was returned with the notation ''address unknown.''

Information was obtained indicating that Frazier might be located at 4850 W. Glenrose Avenue, Phoenix, Arizona and a letter dated June 27, 1963 was sent there. Thereafter, Allstate received information that Frazier might have gone to Las Vegas and Allstate's office in that city assigned a retail credit bureau there to check but this proved negative. Cady also contacted an attorney who had represented Frazier at one time but he was unable to advise him of Frazier's whereabouts.

On July 15, 1963, Kitchel advised King's attorney by letter of his inability to locate Frazier and the efforts that were being made to do so.

Allstate retained Krout and Schneider, investigators, to see if they could locate Frazier. They were unable to do so. However, as a result of a lead obtained from this firm, on October 8, 1963, a letter was sent to Frazier at 1300 South Las Vegas Boulevard, Las Vegas, Nevada. This letter was returned with the notation that the addressee was not there. On October 8, such a letter was also sent to him at Cedar City, Utah, as Allstate had learned from a second investigator that Frazier had received a traffic citation in that city. On October 22, 1963, Kitchel sent two more letters to Frazier, one to the Walnut Creek address and the other to 3055 Dundee Court. Both of these were returned.

As a result of other leads obtained from the second investigator, a letter was sent to Indianapolis, Indiana. Also, on December 9, 1963, two letters were sent to Frazier at 4290 Glenrose Avenue, Phoenix, Arizona. These also were returned.

While the above efforts were being made to locate Frazier, Kitchel obtained a continuance of the trial date from June 4, 1963 to September 11, 1963, then to January 14, 1964, and finally to January 21, 1964.

On the morning of this last date, the court denied Kitchel's oral motion for a further continuance and ordered the action to proceed to trial.

## *Issues on Appeal*

These are: (1) whether Allstate is barred from claiming prejudice from the absence of Frazier on January 21, 1964 because the motion for continuance made on that date was both inadequate and untimely; (2) whether Frazier's breach of the insurance contract was wilful; and (3) whether such breach substantially prejudiced Allstate in its defense of the personal injury action.

## *Motion For Further Continuance*

King points out that the motion did not comply with rule 11 of the Rules for Superior Courts (now rule 224, Cal. Rules of Court) or section 595 (now section 595.4) of the Code of Civil Procedure, particularly with respect to the failure to give *written* notice to the adverse party of the motion for continuance *promptly* upon the necessity for the continuance being ascertained and the presentation of an affidavit showing the materiality of the evidence expected to be obtained from Frazier.

King's argument appears to be that the failure to give *prompt* and *adequate* notice constitutes "laches" and "estoppel," respectively. He concludes that Allstate "was estopped by its own conduct [inadequate motion] from claiming prejudice in the Court below and was barred by laches [untimely motion] from asserting the absence of the defendant [Frazier] at trial as a ground for avoidance of its contractual obligation under the policy of liability insurance."

This argument overlooks the fact that, in order to make an effective application for a continuance on January 21, 1964, Kitchel would have had to make a showing to the court that there was a reasonable assurance that Frazier would be present at trial on a future specified date. (*Taylor* v. *Gordon,* 102 Cal.App.2d 233, 240-241 [227 P.2d 64] ; *Capital National Bank* v. *Smith,* 62 Cal.App.2d 328, 339 [144 P.2d 665] ; *Ross* v. *Thirlwall,* 101 Cal.App. 411, 416 [281 P. 714] ; 12 Cal.Jur. 2d, Continuance, pp. 128-129.)

Kitchel *could not* make such a showing and therefore he could not have made an adequate or timely motion for a continuance of the January 21, 1964 trial date. He did not have even a promising lead as to Frazier's whereabouts after

nine months of intensive search. The only thing he could do was to wait until the last minute, hoping that such a lead would develop and thus permit him to represent to the court that Frazier might be available on or about a certain date.

Kitchel's motion was made in chambers on the morning of January 21, 1964. He admitted, "I simply can't find him." The court then commented that "the matter was originally set for trial April 8, 1963" and "if Mr. Scott [King's attorney] objects to the continuance, I'm afraid I will have to reject your request and turn you down, Mr. Kitchel. We have a panel of Jurors waiting out there. If you had called last night I would have considered it."

King's attorney then stated that "I would have to object to any further continuance." The motion was thereupon denied.

King's attorney conjectures that if Kitchel had called the trial judge "last night," the motion for another continuance might have been granted. We do not so interpret the judge's remark.

We think that the judge meant that, with the jury panel waiting outside in the courtroom, with his knowledge of the prior continuances, and with King's objection to a further continuance, he was not in a position to give the matter the same amount of consideration which he would have given it if he had been advised the night before that a motion for continuance was to be requested. Saying that he "would have considered it" is a far cry from saying that he would have granted the motion.

## Was Frazier's Breach Wilful?

The record clearly establishes that Frazier was fully warned of his obligation under the policy to keep Allstate advised of his whereabouts during the pendency of the lawsuit and that he breached this obligation.

It is equally clear that this breach was in turn the direct and proximate cause of Allstate's inability to communicate to Frazier the time and place of trial.

Allstate's initial letter of June 15, 1962 was admittedly received by Frazier. He responded to it. This letter specifically points out to Frazier that "the terms of your policy require your cooperation in attending any court hearing" and that, "For this reason you, as well as the company, will want to be sure that you can be located at any time."

No contention is made by King that Allstate did not make diligent and strenuous efforts to locate Frazier. The record

not only establishes that Frazier failed to keep Allstate advised of his whereabouts but that, by the manner in which he left his home and business without leaving any forwarding address, he manifested a deliberate intent to keep his whereabouts unknown.

However, King asserts that this breach by Frazier of the cooperation clause in the insurance contract may not have been wilful, since ''there is no showing here that the insured was not the victim of foul play, natural death or disability, or any other circumstances beyond his control, and that this failure to cooperate was, therefore, wilful.''

█ It is an elementary principle of contract law that the burden of proving the defense of inability to perform is on the party asserting it. (*Oosten* v. *Hay Haulers etc. Union,* 45 Cal.2d 784, 788 [291 P.2d 17]; *Hensler* v. *City of Los Angeles,* 124 Cal.App.2d 71, 83 [268 P.2d 12].) King did not even attempt to meet this burden.

The question of whether Frazier's breach was ''wilful'' was not raised at pretrial nor was it made an issue in the pretrial order. King made no request for a specific finding on the subject. (See Code Civ. Proc., § 634.)

All that King did in this respect was to request a *conclusion of law* that there was ''no showing'' that ''Frazier's failure to attend the trial in Action No. 85371 was wilful. . . .''

### Did Frazier's Breach of the Cooperation Clause Substantially Prejudice Allstate's Defense of the Personal Injury Action?

█ In *Hynding* v. *Home Acc. Ins. Co.* (1932) 214 Cal. 743 [7 P.2d 999, 85 A.L.R. 13], plaintiff recovered judgment against one Tucker for personal injuries caused by Tucker's negligence. Tucker was insured against such liability by defendant insurance company. He was insolvent and Hynding brought suit against the insurance company to recover the amount of the judgment against Tucker.

The company set up the defense of Tucker's failure to comply with the cooperation provisions of the policy, including Tucker's failure to attend the trial of the personal injury action.

The trial court struck out this defense and rendered judgment in Hynding's favor. On appeal the judgment was reversed on the ground that such noncooperation was a valid defense.

The Supreme Court held: "We see no escape from the conclusion that the violation of the co-operation clause by the assured was a valid defense against the injured party's action. We say this with the knowledge that in some cases it may work a hardship on such party, who is ordinarily in no position to force the assured to co-operate. . . . [However,] the violation of the condition by the assured cannot be a valid defense against the injured party unless in the particular case it appears that the insurance company was *substantially prejudiced* thereby." (Pp. 751-752; italics added.)

The recent case of *Campbell* v. *Allstate Ins. Co.* (1963) 60 Cal.2d 303 [32 Cal.Rptr. 827, 384 P.2d 155], citing the *Hynding* case with approval, states the rule as follows: "An insurer may assert defenses based upon a breach by the insured of a condition of the policy such as a cooperation clause, but the breach cannot be a valid defense unless the insurer was substantially prejudiced thereby." (P. 305.)

The trial court in *Campbell* rendered judgment for the insurer, relying upon *Margellini* v. *Pacific Automobile Ins. Co.*, 33 Cal.App.2d 93, 99-100 [91 P.2d 136], which reasoned that prejudice to the insurer "must be presumed" as a matter of law from the insured's breach of the cooperation clause.

The Supreme Court reversed the judgment and expressly disapproved *Margellini,* stating that such a "judicially created presumption of prejudice" is "unwarranted." (60 Cal.2d, p. 307.) It concluded that, absent such alleged presumption, the evidence was insufficient to show prejudice.

The basis of its conclusion is stated as follows: "The only evidence introduced by defendant to show prejudice was the testimony of defendant's regional claim manager that a report by the insured is required to guard against false claims, verify that there has been an accident, and determine liability. Defendant had access to the police report and also knew the location of Hammer's automobile. This gave defendant sufficient opportunity to verify that there had been an accident."

A second ground for reversal is stated as follows: "The facts indicate that . . . defendant [insurer] would have been liable on its policy [i.e., the personal injury trial would have been lost] *even if* Hammer [the insured] had cooperated with it." (Italics added.)

The facts upon which the Supreme Court bases the foregoing conclusion are stated in its opinion as follows: "In

November 1954 plaintiffs stopped their automobile at a stop-light and were struck from the rear by an automobile driven by Hammer. The police report of the accident states that Hammer was cited for following too closely and for driving with an expired license, that he had admitted he had been drinking, and that he refused to give a written statement. He told plaintiffs that he was insured and that 'everything would be taken care of.' '' (P. 304.)

The first ground for reversal in the *Campbell* case is not involved herein, there being no contention that the trial court included any ''presumption of prejudice'' in its considera-tion of the evidence.

The second ground for reversal in *Campbell* is applicable *only* if we, as an appellate court, can say *as a matter of law* that the evidence is insufficient to support the finding of the trial court that the insurer was substantially prejudiced by the insured's breach of the cooperation clause.

The issue is one of fact and we must follow the rule that, on appeal, the evidence must be viewed in the light most favora-ble to the judgment. Specifically, we must decide whether the evidence, when so viewed, sufficiently supports the following portion of the trial court's findings:

''Action No. 85371 involved a case of questioned liability of the defendant [Frazier] which was contested by the respec-tive parties at the trial of said action. The failure of Roy O. Frazier to attend the trial of Action No. 85371 materially prejudiced the defense of said action. . . . Roy O. Frazier's failure to keep the Allstate Insurance Company advised of his whereabouts and his failure to attend the trial of Action No. 85371 after the Allstate Insurance Company had undertaken reasonable steps to locate its insured and to advise him of the date, time and place of the trial and to request his presence thereat, constituted a material breach of the cooperation clause of the contract of insurance between the Allstate Insur-ance Company and Roy O. Frazier. The failure of Roy O. Frazier to cooperate with the Allstate Insurance Company in the defense of Action No. 85371 by failing to attend the trial of said action substantially prejudiced said company in the defense of said action.''[1]

---

[1] The first two sentences above are taken from the ''Findings of Fact'' and the last two sentences from the ''Conclusions of Law.'' The circum-stance that the findings of fact and conclusions of law may be somewhat intermingled does not affect their true status. (*Edwards* v. *Lang*, 198 Cal.App.2d 5, 14 [18 Cal.Rptr. 60]; *Carter* v. *Adler*, 138 Cal.App.2d 63, 70 [291 P.2d 111].)

We shall now turn to the facts relating to the issues of negligence and contributory negligence.

The accident happened on a Saturday afternoon on a straight, level two-lane highway, known as Willow Pass Road, which runs east and west. The day was clear and the pavement was dry. King was alone on the motorcycle he was operating. Two other motorcycles accompanied him.

Riding in the pickup truck operated by Frazier was one Dutton, a twice-convicted felon who was then an employee of Frazier's business firm but who was back in the penitentiary at the time of trial and was not called as a witness.

King's version of the accident is as follows: that he had set out on a borrowed motorcycle "just going for a ride"; that he was accompanied by three friends on two other motorcycles, one of which was "riding double"; the motorcycles were eastbound; he was in the lead, ahead of a Ford automobile which he had just passed; the other two motorcycles were behind the Ford; after he passed the Ford, there was nothing to obstruct his view ahead; however, there were one or two cars coming from the opposite direction; King did not see the Frazier pickup truck until he was 30 to 40 feet from it; it was stopped on the shoulder, headed east; the pickup suddenly pulled out and "stopped dead" at the broken center line, apparently waiting for the westbound cars to clear; the front end of the pickup was across the center line; his motorcycle was then 15 to 20 feet from the pickup in its stopped position and he was then going about 20 miles per hour; he applied his brakes and slid into the truck, just below the left door; the truck's position was straight across the highway at the time he ran into it.

Frazier's deposition was admitted in evidence. He stated therein that his pickup truck was parked at the edge of a parking lot, headed north; that he intended to turn west on Willow Pass Road to return to his warehouse; that he looked both east and west; that it was clear, except for one eastbound car about 200 feet away, "moving rather slowly"; that he did not at that time see the motorcycle which later appeared from behind the car; that as he was pulling onto the highway, the motorcycle came around the car at an excessive speed; that the motorcycle tried to turn to avoid hitting the truck, but that it went out from under the rider and slid into the side of the truck; that he first saw the motorcycle when it was passing the eastbound car, which was approaching at about 25 to 30 miles per hour; that the motorcycle was going 50 to 60

miles per hour; that his truck was stopped in the center of the highway when he first saw the motorcycle come around from behind the approaching car.

King argues that the defense was not prejudiced by Frazier's absence at the trial because his deposition was a part of the evidence which could be considered by the jury in arriving at a verdict.

This deposition was taken by King's attorney pursuant to Code of Civil Procedure section 2016, subdivision (a), which allows him to do so "for the purpose of discovery." He had no intention of using it "as evidence in the action," as the statute also permits. Nor did Kitchel *at that time* contemplate any need for using it as evidence at the trial. *All* the questions were asked by King's attorney. His purpose was to obtain all of the information which he thought might be of assistance to him and his client.

The law then in effect permitted the questioning of Frazier "as if under cross-examination." (Code Civ. Proc., § 2055; cf. Evid. Code, § 776, effective January 1, 1967.) The questions put to him were not framed so as to produce a clear account of his version of the accident.

Many of the questions had no relation to the issue of liability and some were stricken out by agreement of counsel before the deposition was admitted in evidence. For example, Frazier was asked the amount of his insurance coverage, why he had terminated Dutton's employment, when in fact the questioner himself had represented Dutton previously as his attorney and knew about the charge which caused Frazier to discharge him, and, as a final example, whether Frazier knew the names of any witnesses to the accident other than the ones mentioned in the deposition.

Frazier's deposition, exclusive of preliminary recitations and deletions, covers a total of 15 transcript pages. The first question asked as to how the accident happened appears on page 7, where Frazier was asked to relate what he had *told* the police officer after the accident. The answer was what could be expected of a lay witness when asked such a broad question.

It was long and rambling, and contained such references as "I myself have rode a motorcycle" and "he [the officer] was the one that determined the footage."

Kitchel testified that he did not ask any questions of his client because he saw no purpose in doing so at that time. He

further testified that he had no indication at that time that Frazier would not make himself available for the trial.

As the result of the circumstances under which the deposition of Frazier was taken, his account of the accident appears in such a form that it is difficult to follow in some respects and certainly does not include many important points which his attorney would undoubtedly have brought out at the trial.

The adverse effect of the absence of an eyewitness defendant at the trial of a two-vehicle collision personal injury action was testified to by three well-qualified trial lawyers specializing in that type of litigation, one of whom was Kitchel.

All testified that in such a case the defense would be substantially prejudiced by the absence of the defendant, particularly where no reasonable excuse could be offered to soften the effect of such absence.

As Kitchel pointed out, when his adversary commented to the jury that ''if his [Kitchel's] case is so good, where is his man,'' all that he could do was to ask for a mistrial. He did so, but it was denied.

The expert witnesses testified that a deposition was a cold, impersonal type of evidence and was a ''weak and ineffectual substitute'' for the ''live'' testimony of an eyewitness party given from the witness stand; that juries were frequently prejudiced against a party charged with negligently driving a motor vehicle who, though denying the charge, fails to appear to defend himself, particularly without any excuse from him for his absence; that in such a situation the jury very often feels that such a party has no concern about the outcome of the trial and that his denial of liability is not sincere or made in good faith; that the standard instruction (BAJI 31) as to the manner in which to consider testimony introduced by deposition often does not erase or counterbalance what one expert described as the ''ruinous'' effect of the unexplained absence of the defendant.

The experts also stressed the importance of the personalities of the parties when the all-important issue is that of their credibility. Here we have one version of the accident from the lips of a 23-year-old motorcycle operator who, as he says, was ''just out for a ride.'' In opposition is the *typed* version of the 37-year-old partner in a business firm driving a pickup truck back to the firm's warehouse after being on a business errand.

Frazier was described as having a good appearance while

King's appearance was "below average" and that King was a "fair to poor witness" at the taking of his deposition.

We are of the opinion that the findings of fact of the trial court are supported by substantial evidence, that its conclusions of law are correctly drawn therefrom, and that the judgment is consistent with said findings and conclusions.

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was deemed denied August 24, 1967, pursuant to Rule 27(e), California Rules of Court. Appellant's petition for a hearing by the Supreme Court was denied September 21, 1967. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.