[No. B048744. Second Dist., Div. Seven. Feb. 26, 1991.]

ROBERT I. SLATER, Plaintiff and Apellant, v.
LAWYERS' MUTUAL INSURANCE COMPANY, Defendant and
Respondent.

**COUNSEL**

Tremaine, Shenk, Stroud & Robbins and Terence C. McGaughey for Plaintiff and Appellant.

Musick, Peeler & Garrett, R. Joseph De Briyn, Harry W. R. Chamberlain II and James L. Wellman for Defendant and Respondent.

## OPINION

LILLIE, P. J.— ■ ■ ■ ■ Plaintiff Robert I. Slater (Slater), an attorney, appeals from summary judgment[1] entered against him and in favor of defendant Lawyers' Mutual Insurance Company (LMIC), Slater's professional liability insurer, on plaintiff's complaint alleging LMIC breached its insurance contract and the implied covenant of good faith and fair dealing in denying Slater coverage under the policy with respect to a legal malpractice action filed against Slater.

### FACTUAL AND PROCEDURAL BACKGROUND

In a complaint filed by Slater against LMIC in January 1989 for breach of written contract and breach of the implied covenant of good faith and fair dealing, he alleges that in April 1984, LMIC issued to him a professional liability insurance policy which policy was renewed for the period from April 15, 1985, to April 15, 1986, and then from April 15, 1986, to April 15, 1987; on February 26, 1987, Cesar Lopez filed in the superior court a complaint against Slater for legal malpractice; Slater was unaware of Lopez's claim and the action until July 1, 1987, when he was served with the summons and complaint; on October 6, 1987, Slater requested in writing that LMIC provide him a defense to the Lopez action, which LMIC refused on December 28, 1987; LMIC's December 28 letter advised Slater that no coverage would be afforded for the Lopez action because Slater did not make a claim during the pendency of the policy; on October 13, 1988, LMIC agreed to accept Slater's tender of defense with a reservation of rights based on a recent court of appeal decision; on October 25, 1988, LMIC notified Slater that it was withdrawing the defense in view of the decertification of the court of appeal decision; Slater alleged that LMIC wrongfully refused to accept the tender of defense and wrongfully refused to pay benefits with respect to the Lopez action.

In answer to the complaint, LMIC alleged, inter alia, that it has no duty under the policy or otherwise to provide Slater with a defense to the Lopez action or to indemnify him with respect to any sum of money he may be obligated to pay in said action.

Thereafter, LMIC filed motion for summary judgment on the ground that it was without dispute that LMIC was not obligated to afford coverage

---

[1] Although our record on appeal does not contain a judgment, but an "Order for Entry of Summary Judgment," which is signed by the judge, the notice of appeal and briefs of both parties characterize the order as a summary judgment. Although an order granting a motion for summary judgment is not an appealable order, we construe the order to incorporate a judgment in the interests of justice and to avoid delay. (*Lindgren* v. *Baker Engineering Corp.* (1988) 197 Cal.App.3d 1351, 1352, fn. 1 [243 Cal.Rptr. 476].)

to Slater because under the terms of the policy, no "claim" was "made" to LMIC during the policy period. Although Slater filed declarations and points and authorities in opposition to the motion, the motion was submitted on a joint statement of undisputed facts which essentially included all of the background facts alleged in the complaint, but not any of its legal conclusions. The joint statement also established that in February 1987, LMIC notified Slater that the policy would not be renewed after its April 15, 1987, expiration date; however, Slater could apply for an "Extended Reporting Period Endorsement" upon payment of an additional premium; Slater did not apply for such extended reporting period endorsement, and the policy expired on April 15, 1987.

After hearing on the motion for summary judgment, the court granted the motion; Slater filed timely notice of appeal from the summary judgment. ■ As Slater acknowledges in his opening brief on appeal, the appeal presents one major issue: "Whether [LMIC] must provide coverage to an insured under a 'claims-made' professional liability policy or is the insured without coverage."

### DISCUSSION

■ "Summary judgment is an appropriate vehicle to determine coverage under an insurance policy when it appears there is no material issue of fact to be tried and the sole issue before the court is one of law." (*Pepper Industries, Inc.* v. *Home Ins. Co.* (1977) 67 Cal.App.3d 1012, 1017 [134 Cal.Rptr. 904].) ■ "Where, as here, the trial court was asked to interpret a written contract based upon a stipulation of facts our review is *de novo*. The issue presented is one of law and the appellate court 'must make its own independent determination of the meaning of the contract.'" (*Travelers Ins. Co.* v. *National Union Fire Ins. Co.* (1989) 207 Cal.App.3d 1390, 1397 [255 Cal.Rptr. 727].)

■ As "[t]he proper initial focus for a court in resolving a question of insurance coverage is on the language of the insurance policy itself, rather than on judicially created 'general' rules that are not necessarily responsive to the policy language or facts of the dispute" (*Garriott Crop Dusting Co.* v. *Superior Court* (1990) 221 Cal.App.3d 783, 790 [270 Cal.Rptr. 678]), we set out the relevant portions of the policy.

On the cover page of the policy under a bold heading titled "NOTICE," as well as in bold type on the next page, the first page of the policy, it is stated: "This is a 'Claims-Made' policy. The coverage afforded by a 'Claims-Made' policy is generally limited to claims arising from the performance of professional services which are first made against the attorney and reported to the

Company while the policy is in force. A 'Claims-Made' policy does not generally provide coverage for claims first made against the attorney or reported to the Company after the expiration of the policy even if the acts or omissions on which the claim is predicated occurred, or are alleged to have occurred, while the policy was in force. Please review the policy carefully and discuss the coverage thereunder with your insurance agent or broker."

A portion of the policy titled "Definitions," states that " 'Claim' whenever used in this policy means a demand, including service of suit or institution of arbitration proceedings, for money against the insured. [¶] A claim shall be considered 'made': (1) when it is first reported to the Company or (2) when the Insured, having become aware that the Insured has committed an act, error or omission which may give rise to a claim, reports to the Company: (i) Such specific act, error or omission; (ii) The injury or damage which has or may result from such act, error or omission; and (iii) the date and circumstances by which the Insured first became aware of such act, error or omission."

Under a provision titled "THE COVERAGE," the policy in pertinent part provides: "The Company agrees to pay on behalf of the Insured all sums . . . which the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD: (a) By reason of any act, error or omission in professional legal services . . . ; (b) Because of personal injury and arising out of the professional services of the Insured as a lawyer . . . . [¶] PROVIDED ALWAYS THAT such act, error or omission or such personal injury happens: (a) During the policy period or (b) Prior to the policy period provided that on the effective date of this policy, THE INSURED DID NOT KNOW . . . THAT SUCH ACT, ERROR, OMISSION . . . WOULD BE THE BASIS OF A CLAIM, and only if the claim for which coverage is otherwise available hereunder is reported in compliance with the subsection of this policy entitled 'Notice of Claim or Suit' . . . ."

The subsection entitled "Notice of Claim or Suit" provides that "As a condition precedent to the Insured's right to the protection afforded by this insurance, the insured shall, as soon as practicable during the policy period give to the Company, written notice directed to the Company's Claims representative, of any claim made against the insured."

■■■ Appellant makes three major arguments to support his contention that the policy provides coverage: (1) California's "notice-prejudice" rule operates to bar LMIC from denying coverage on the ground that it received notice of the claim after the policy period had expired, unless LMIC shows

it was substantially prejudiced by such late notice; (2) the notice-prejudice rule is a matter of public policy that should prevail over a strict enforcement of the policy's provisions; and (3) the policy language concerning reporting and notice of the claim is ambiguous, requiring that coverage be provided.

██ In arguing that the policy is ambiguous and should be construed to afford coverage for the Lopez action (which, unknown to Slater and LMIC, was filed during the policy period), appellant essentially urges us to consider the portion of the policy defining the scope of coverage in isolation and without applying the policy's definition of when a claim is "made." Because we must look at the provisions of the policy as a whole (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 916, fn. 7 [226 Cal.Rptr. 558, 718 P.2d 920]), we conclude that the reporting and notice provisions are not ambiguous and do not render the coverage language ambiguous. When the policy definition of when a claim is considered "made" is applied to the coverage provision, the only reasonable interpretation of the latter provision is consistent with the "Notice" portion on the face sheet of the policy: "The coverage afforded . . . is generally limited to claims arising from the performance of professional services which are first made against the attorney and reported to the Company while the policy is in force."

As it is without dispute that the Lopez action was not reported to LMIC during the policy period, there is no coverage under the terms of the policy unless public policy considerations or the "notice prejudice" rule operates to bar LMIC from denying coverage. ██ "California's 'notice-prejudice' rule operates to bar insurance companies from disavowing coverage on the basis of lack of timely notice unless the insurance company can show actual prejudice from the delay." (*Pacific Employers Ins. Co. v. Superior Court* (1990) 221 Cal.App.3d 1348, 1357 [270 Cal.Rptr. 779].)

██ To support his claim that the "notice prejudice" rule applies herein, appellant cites *Campbell v. Allstate Ins. Co.* (1963) 60 Cal.2d 303 [32 Cal.Rptr. 827, 384 P.2d 155], *Northwestern Title Security Co. v. Flack* (1970) 6 Cal.App.3d 134 [85 Cal.Rptr. 693], and *Moe v. Transamerica Title Ins. Co.* (1971) 21 Cal.App.3d 289 [98 Cal.Rptr. 547], as well as decisions of federal district courts interpreting California law with respect to the notice prejudice rule. None of the cases cited by appellant deals with the issue of coverage; none discusses the notice prejudice rule in conjunction with the policy language at issue herein, or similar policy language.[2] We find to be

---

[2] In *Campbell v. Allstate Ins. Co., supra,* 60 Cal.2d 303, plaintiffs, injured in an automobile accident by defendant's insured, obtained a default judgment against the insured who left the state and did not communicate with defendant insurer; plaintiffs brought an action to compel the insurer to pay the default judgment. The trial court denied recovery. The Supreme Court

persuasive and dispositive of this appeal the case of *Pacific Employers Ins. Co.* v. *Superior Court, supra*, 221 Cal.App.3d 1348 (hereafter *Pacific Employers*), which we acknowledge is distinguishable on the facts. The insured in *Pacific Employers* knew about the claims during the policy period but the insured's attorney failed timely to notify the insurer.[3]

As explained in *Pacific Employers*, "The [notice prejudice] rule was developed in the context of 'occurrence' policies. [Citations.] [¶] We recognize that the 'notice prejudice' rule has been applied to a 'claims made' professional errors and omissions policy. (See *Northwestern Title Security Co.* v. *Flack* (1970) 6 Cal.App.3d 134, 140-142 . . . .) In applying the rule, however, the *Flack* court relied solely on *Campbell* finding, without discussion, that the distinction between a 'claims made' insurance policy and an 'occurrence' policy did not require a departure from the ordinary application of the notice-prejudice rule. In our opinion, the distinction is critical. [¶] Occurrence policies were developed to provide coverage for damage caused

---

in *Campbell* noted the general rule that "An insurer may assert defenses based upon a breach by the insured of a condition of the policy such as a cooperation clause, but the breach cannot be a valid defense unless the insurer was substantially prejudiced thereby" (60 Cal.2d at p. 305) then reversed the judgment on the ground of insufficient evidence of prejudice due to the insured's breach of the cooperation clause. (*Id.*, at pp. 306-307.)

In *Moe* v. *Transamerica Title Ins. Co., supra*, 21 Cal.App.3d 289, title insurers appealed from a judgment against them, contending that "even if respondents were entitled to recover on the title insurance contract, they waived such right to recover by failing to comply with certain provisions which were contained in the policy and which required respondents to 'promptly notify' appellants of their loss and to give written notice within 60 days after the loss or damage was determined." (21 Cal.App.3d at p. 301.) The court in *Moe* found the contention to be without merit as appellants did not make a showing of substantial prejudice. (*Id.*, at p. 302.)

The issue in *Northwestern Title Security Co.* v. *Flack, supra*, 6 Cal.App.3d 134, involving a professional errors and omissions policy issued to a title insurance company, similarly was whether "plaintiff's 13 months' delay in notifying defendant of the Arens claim was prejudicial as a matter of law, and therefore constituted a material breach of the indemnity contract." (6 Cal.App.3d at p. 140.) The insurer in *Flack* also made a policy argument that the notice prejudice rule should only apply to "occurrence-type" policies, such as automobile insurance policies, but not to "claims-type" policies insuring against claims for errors and omissions. The court in *Flack* concluded that "there is no indication in *Campbell* or the other cases cited above that a different rule can apply in 'claims-type' policies. The cases make it clear that the subject rule applies to all cases in which the insurer asserts a defense based upon a breach by the insured of a cooperation or notice clause." (6 Cal.App.3d at pp. 143-144.)

[3] Appellant urges us not to apply *Pacific Employers* and to adopt the approach of several other states which allegedly have applied the notice prejudice rule to errors and omissions policies; he also urges us to follow *Mt. Hawley Ins.* v. *Federal Sav. & Loan Ins. Corp.* (C.D.Cal.1987) 695 F.Supp. 469, which, without any discussion or analysis, applied *Campbell* to a claims made and reported policy, then went on to find that there was no coverage because the claim fell within one of the policy exclusions. (695 F.Supp. at pp. 481, 484-485.)

We decline to follow *Mt. Hawley*, as did another federal court applying California law. (See *Burns* v. *International Ins. Co.* (N.D.Cal. 1989) 709 F.Supp. 187, 190-191.) We find more persuasive the analysis in both *Burns* and *Pacific Employers*.

by collision, fire, war, and other identifiable events . . . . Notice provisions contained in such occurrence policies were 'included to aid the insurer in investigating, settling, and defending claims,' not as a definition of coverage. [Citation.] . . . [¶] All professional liability policies were at one time 'occurrence' policies. [Citation.] Underwriters soon realized, however, that 'occurrence' policies were unrealistic in the context of professional malpractice because the injury and the negligence that caused it were often not discoverable until years after the delictual act or omission. In an effort to reduce their exposure to an unpredictable and lengthy 'tail' of lawsuits filed years after the occurrence they agreed to protect against, underwriters shifted to the 'claims made' policy . . . . This type of policy differed materially from an 'occurrence' policy in several aspects. Most notably, it was transmittal of notice of the claim to the insurer which was the event that invoked coverage. [¶] The effect of applying the 'notice prejudice rule' as developed in *Campbell* and its progeny to the facts of this case would be to convert PEIC's claims-made policy into an occurrence policy. In the absence of actual prejudice from late reporting, which also defeats coverage under an occurrence policy, all negligence during the policy period would be covered." (221 Cal.App.3d at pp. 1357-1358.)

The court in *Pacific Employers* acknowledged that its refusal to apply the notice prejudice rule resulted in coverage more restrictive than that provided by the basic types of professional liability policies, but that it was bound by the principle that " '[a]n insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected.' " (221 Cal.App.3d at p. 1359, citing *National Ins. Underwriters* v. *Carter* (1976) 17 Cal.3d 380, 386 [131 Cal.Rptr. 42, 551 P.2d 362].)

The court in *Pacific Employers* also found persuasive the following language in *Gulf Ins. Co.* v. *Dolan, Fertig and Curtis* (Fla. 1983) 433 So.2d 512, 512 [37 A.L.R.4th 374]: " 'If a court were to allow an extension of reporting time after the end of the policy period, such is tantamount to an *extension of coverage* to the insured gratis, something for which the insurer has not bargained. This extension of coverage, by the court, so very different from a mere condition of the policy, in effect rewrites the contract between the two parties. This we cannot and will not do.' " (221 Cal.App.3d at pp. 1358-1359, original italics.)

Other than the argument that California has "traditionally required an insurer to show substantial prejudice," apparently a reference to *Campbell*, *Flack* and other cases (see, *ante*, fn. 2), appellant offers no authority to support his claim that the reporting provisions of the instant policy violate public policy or are unfair.

As pointed out by the court in *Pacific Employers*, there is no merit to the claim that the policy impermissibly restricts an insured's freedom to contract in the situation where a claim is made near the end of the policy's term, thus forcing the insured to renew his policy in order to make the required notification: "An insured has the option of either purchasing another 'claims made' policy from the initial insurer to extend the period of coverage, or purchasing a policy with retroactive coverage with another insurer. An insured is not locked into a contractual relationship with the initial insurer because nothing interferes with the freedom to pursue either alternative. Additionally, many policies offer protection such as that afforded to the named insured in the instant case. Under the terms of the PEIC policy the insured, upon the policy's expiration, could have obtained insurance from another insurer and still protected himself against unknown claims by purchasing from PEIC an endorsement providing for an 'extended reporting period.'" (221 Cal.App.3d at p. 1360.)

In the instant case, Slater was offered the opportunity to protect himself against unknown claims by purchasing an extended reporting period endorsement, which he declined. Under the facts of this case, Slater has failed to demonstrate that the terms of the policy are contrary to public policy or are manifestly unfair.

We conclude that summary judgment was properly granted as the provisions of the policy are plain and unambiguous and require that a claim be made and reported to the insurer during the policy period; the Lopez action was not reported to LMIC during the policy period; the notice prejudice rule does not apply herein; and appellant has failed to demonstrate that enforcement of the policy is contrary to public policy.

DISPOSITION

The judgment is affirmed.

Woods (Fred), J., concurred.

**JOHNSON, J.**—I respectfully dissent.

In the past, most liability insurance policies were of the "occurrence" variety. Policies of this type protect the insured against any lawsuits that might ever arise out of any event which occurs during the policy period. In an effort to reduce their exposure to an unpredictable and lengthy "tail" of lawsuits filed years after the occurrence they agreed to protect against, insurance companies have shifted more and more to another basic type of policy—the "claims made" variety. The purest version of this type of policy

protects insureds for any claims made against them during the policy period no matter how many years earlier the event generating the liability may have occurred.

In this case, we are asked to construe and apply a still more restrictive policy—the "claims made *and* claims reported" variety. Indeed, this case illustrates in a unique and dramatic fashion just how restrictive this kind of coverage is when the policy is construed strictly against the policyholder. Here the liability-generating event took place during the earlier policy period covered by this insurance company. Hence, there was no dispute about whether the "occurrence" qualified under the policy. Moreover, the injured parties filed their lawsuit within the policy period. Still the insurance company denies coverage because the making of the claim was not "reported" to the insurer within the policy period.

This species of insurance policy—requiring the making of the claim and the reporting of the claim all to take place within the same policy period—is a relatively recent innovation. As might be expected it has begun to receive more and more attention by the appellate courts of other states.[1]

It is well settled in California that an insured's violation of a contract term requiring claims to be reported within a certain time frame will not

---

[1] Some jurisdictions have upheld the requirement a claim be reported as well as made during the period specified in the policy. (*Gulf Ins. Co* v. *Dolan, Fertig and Curtis* (Fla. 1983) 433 So.2d 512 [37 A.L.R.4th 374] [upholding the denial of coverage for a claim filed against the insured relatively late in the policy term but not reported until after the term].) See also *Graman* v. *Continental Casualty Co.* (1980) 87 Ill.App.3d 896 [ 409 N.E.2d 387]); *City of Harrisburg* v. *Intern. Surplus Lines, Inc.* (M.D.Pa.1984) 596 F.Supp. 954; *Zuckerman* v. *Nat. Union Fire Ins.* (1985) 100 N.J. 304 [495 A.2d 395]; and *Safeco* v. *Gannon* (1989) 54 Wash.App. 330 [774 P.2d 30] [dictum in claim first made against insured after policy expired and thus also first reported after that expiration].) Other jurisdictions have taken the opposite position holding insurance companies have to honor late-reported claims even though the policy expressly only insures claims reported to the company during the policy period or in a timely fashion. (*Sherlock* v. *Perry* (E.D.Mich. 1985) 605 F.Supp. 1001 [imposing coverage for a claim filed several months after the policy expired despite a clause requiring both the "occurrence" and the "reporting of the occurrence" to the insurance company to take place during the policy period]. See also, *Reliance Ins. Co* v. *St. Paul's Ins. Cos.* (1976) 307 Minn. 338 [239 N.W.2d 922, 84 A.L.R.3d 181]; *Johnson Controls* v. *Bowes* (1980) 381 Mass. 278 [409 N.E.2d 185]; *American Home Assurance Co.* v. *Ingeneri* (Me. 1984) 479 A. 2d 897; *Stine* v. *Continental Cas. Co.* (1984) 419 Mich. 89 [349 N.W.2d 127] [dictum that notice prejudice rule would apply to claim filed during policy term but reported after that term even though policy was of the "claims made and reported" variety]; *St. Paul Fire & Marine Ins.* v. *House* (1989) 315 Md. 328 [554 A.2d 404] [policy ambiguous whether claim must be reported during policy period and hence not reach issue whether notice prejudice rule applies to late reported claim].)

However, few of these cases have dealt with the special circumstance of the instant case—a claim "made" against an insured during the policy period but which remained unknown to the insured until after the policy expired.

justify denial of coverage for that claim unless the insurance company can prove it suffered actual prejudice in defending the claim as a result of the failure to comply with the notification requirement. In the landmark case of *Campbell* v. *Allstate Ins. Co.* (1963) 60 Cal.2d 303 [32 Cal.Rptr. 827, 384 P.2d 155], Chief Justice Gibson endorsed still earlier cases establishing this principle and then proceeded to disapprove earlier lower court decisions which had ruled prejudice could be assumed.

"[I]t has been held that prejudice must be shown with respect to breach of a notice clause. (*Abrams* v. *American Fidelity & Cas. Co.*, 32 Cal.2d 233, 237, 239 . . . ; *Reed* v. *Pacific Indemnity Co.*, 101 Cal.App.2d 151, 161 . . . ; *Gibson* v. *Colonial Ins. Co.*, 92 Cal.App.2d 33, 35-36 . . . ; . . . We are satisfied that the requirement of prejudice set forth in these decisions is proper.

". . . . . . . . . . . . . . . . . . . . . .

"In reaching its decision, the trial court properly determined that it was bound by *Margellini* v. *Pacific Automobile Ins. Co.*, 33 Cal.App.2d 93, 99-100 . . . , where it was reasoned that prejudice 'must be presumed' as a matter of law . . . . We have concluded, however, that this reasoning is unsound and that *Margellini* should be disapproved . . . . Although it may be difficult for an insurer to prove prejudice in some situations, it ordinarily would be at least as difficult for the injured person to prove a lack of prejudice, which involves proof of a negative. The presumption would not be in keeping with the public policy of this state to provide compensation for those negligently injured . . . through no fault of their own." (*Campbell* v. *Allstate Ins. Co.*, supra, 60 Cal.2d 303, 306-307. See also, e.g., *Billington* v. *Interinsurance Exchange* (1969) 71 Cal.2d 728 [79 Cal.Rptr. 326, 456 P.2d 982], and cases cited therein; *Moe* v. *Transamerica Title Ins. Co.* (1971) 21 Cal.App.3d 289 [98 Cal.Rptr. 547]; *Northwestern Title Security Co.* v. *Flack* (1970) 6 Cal.App.3d 134 [85 Cal.Rptr. 693].)

Here Lawyers' Mutual neither contends nor has had the opportunity to establish any prejudice from Slater's failure to *report* the earlier filed claim within the policy period. Instead the majority has accepted Lawyers' Mutual argument this "notice-prejudice" rule only applies to "occurrence" policies and not "claims made" policies. However, the first California court to address the issue ruled otherwise, observing in unequivocal language:

"[D]efendant [insurance company] argues that in a 'claims-type' policy the possibility of prejudice resulting from late notice is greater than in 'occurrence-type' policies. In considering this argument we observe that, notwithstanding the generic differences between the two types of policies,

there is *no indication* in *Campbell* or the other cases cited above that *a different rule can apply in 'claims-type' policies.* The cases make it clear that *the [notice-prejudice] rule applies to all cases in which the insurer asserts a defense based upon a breach of a . . .* notice clause . . . . [T]he crucial question in each instance is not the possibility of prejudice but rather whether there was actual prejudice to the insurer." (*Northwestern Title Security Co.* v. *Flack, supra,* 6 Cal.App.3d 134, 143-144, italics added.)

One might gather the impression from the majority opinion that the "weight of authority" supports the proposition the "notice-prejudice" rule does not apply to "claims made" as opposed to "occurrence" insurance policies. Actually the "weight of authority"—if defined as what the majority of those appellate judges who have considered this issue have decided—is inconclusive on this issue.[2] It is also deceiving, because it has been shaped in part by the well conceived litigation strategy of at least one of the insurance companies involved in these appeals. One important appellate decision which unequivocally held the "notice-prejudice" rule applies to "claims made" as well as "occurrence" policies in California has been purged from the law books as a result of a settlement agreement between that insurance company and the successful appellant. A determined attempt was made to do the same in another case.[3]

In a case decided in 1987, the Ninth Circuit specifically held that under California law the "notice-prejudice" rule indeed extends to "claims made" insurance policies. (*New England Reinsurance Corporation* v. *National Union Fire Insurance Company* (9th Cir. 1987) No. 86-6432, vacated and withdrawn from publication 829 F.2d 840.) In that case the legal malpractice coverage expressly limited coverage to claims "first made against the insured and reported [in writing] to the Company during the policy period." It also offered a "tail" policy for an additional premium to cover claims made or reported after the original policy expired. The District Court granted summary judgment for the insurer reasoning, as does the majority opinion in this case, that "the policy's requirement that claims be reported within the policy period is an unambiguous coverage requirement that does not come within California's notice prejudice rules."

The Ninth Circuit reversed. Writing for a unanimous panel, Judge Wiggins reasoned:

---

[2] See, e.g., the cases collected in footnote 1, *ante.*

[3] In no sense do I mean to imply that institutional clients engaging in such strategic actions are behaving improperly or that their lawyers are engaged in unethical conduct. These are merely clients, who like nearly all clients, act to further their own interests. Sometimes these clients are astute enough to recognize it is better to sacrifice in an individual case in order to increase the chances of winning in hundreds of other similar cases. Likewise their lawyers were simply fulfilling their ethical responsibilities in advising and implementing a litigation strategy calculated to further their clients' long-run interests.

"The underlying public policy requiring a showing of insurer prejudice to avoid coverage liability does not change depending on whether an unambiguous notice provision is described as a condition precedent to liability or a coverage covenant. . . . For an insurer to circumvent California's public policy underlying the notice prejudice rule by the simple expedient of categorizing the notice clause as a coverage requirement would be a triumph of form over substance.

". . . . . . . . . . . . . . . . . . .

"As California's well-established public policy requires an insurer to demonstrate prejudice before a notice provision can be invoked to deny liability, and a claims made and reported policy would defeat that rule, we decline to enforce the provision unless National Union can show prejudice." (*New England Reinsurance Corporation* v. *National Union Fire Insurance Company*, 9th Cir. No. 86-6432.)

The ink was barely dry on Wiggins's opinion, however, when the parties reported a settlement paying the insured a substantial sum but *conditioned* on a requirement the Ninth Circuit decision be erased as precedent. Thus, on October 2, 1987, the court entered an order "pursuant to the stipulation of the parties" which vacated the district court's summary judgment but also vacated and withdrew from publication its own decision of July 21, 1987.

A similar but ultimately unnecessary example of the same phenomenon occurred before this very division in a case we decided in 1988, *Village Escrow Co.* v. *National Union Fire Ins. Co.* (B029042, decided June 22, 1988). (Since this case ultimately was depublished by the California Supreme Court, I mention it not because of any precedential value but because of what it illustrates about how settlements have been used to affect the configuration of authority on the particular issue involved in this case.) There a claim had been filed against the insured during the period of the "claims made and reported" policy. But the plaintiff did not serve the complaint until a year after the policy expired. The trial court granted summary judgment in favor of the same insurance company involved in the Ninth Circuit's *New England Reinsurance* decision on grounds the claim had not been reported to the company during the policy period. During oral argument before this court several pointed questions were directed at the lawyer representing the insurer. Two working days later, and before we had filed an opinion, the parties reported a settlement which would pay the

appellant $90,000 if, and only if, our court consented to dismiss the appeal and refrained from filing an opinion in the case. This court rejected this request and filed an opinion reversing the trial court and explaining why we had exercised our discretion to refuse this belated motion to dismiss. However, the California Supreme Court subsequently depublished our opinion rendering all this frantic maneuvering irrelevant.

Since as to this issue the apparent "weight of authority" is not just inconclusive but downright misleading, I feel compelled to examine the question anew. In my opinion, properly framed that question is: Given the rationale and policies undergirding the notice-prejudice rule should that rule be abrogated merely because the notice requirement is moved to the "definitions" or "coverage" clause of the contract?

As Judge Wiggins once observed, it would elevate form over substance to hold a reporting requirement was subject to the "notice-prejudice" rule if located in a separate clause of the insurance contract, but immune from that rule if placed in the same clause with other conditions defining the insurance company's liability under the policy. The majority opinion makes much of this particular requirement as being within the "definitions" and "coverage" clauses of the policy. According to this argument, somehow moving the reporting requirement to the "definitions" and "coverage" clauses makes it different in kind from a reporting requirement set forth in its own paragraph or along with other conditions in another paragraph located elsewhere in the contract.

But there is no magic about where the reporting requirement is placed within an insurance contract. Coverage is defined and the insurance company's liability determined by all the paragraphs and clauses of the policy, not just those labelled as "definitions" and "coverage" clauses. What is given in the "definitions" or "coverage" clauses can be and often is taken away by a later exclusion or condition or requirement. There are numerous examples of this phenomenon in the instant policy. Conversely, what is taken away in the "insuring agreement" clause can be restored by another paragraph of the policy.

Placing a limitation on coverage in the "definitions" or "coverage" clauses makes it no more immune from the equitable constraints of insurance law than if those limitations were in a paragraph labelled "exclusion," "condition," "policy requirement," or anything else. All of these are conditions precedent to the insurer's liability to the insured under the contract. Moving them in or out of the "definitions" or "coverage" clauses makes no practical—or even theoretical—difference in their logical or legal effect.

Analyzing the internal logic of insurance contracts we find they consist of a series of "if-then" statements each and all of which must be satisfied before the insurance company will be liable to defend or indemnify the insured. *If* A *and* B *and* C *and* D *and* E *and* F etc. [where A, B, etc., represent the conditions which must exist or be satisfied] *then and only then* X [where X represents the insurance company's liability under the policy]. The policy involved in the instant case might be translated in part as follows: IF [the insured commits an error or omission related to the practice of law] AND [this error or omission occurs during the policy period] AND [a lawsuit is filed arising from this error or omission during the policy period) OR [the insured apprises the insurer of its error or omission during the policy period and a lawsuit is filed after the policy period)] AND [the insured reports the lawsuit to the insurer during the policy period] AND [the remaining lengthy list of "if" statements are satisfied] THEN AND ONLY THEN [the insurance company is obligated to defend the insured and to indemnify him for any losses up to the maximum provided in the policy].

The above merely serves to highlight what the array of clauses, conditions, exclusions, requirements, etc. found in the typical insurance contract really amounts to—the true substance of the policy. It is irrelevant whether a given "if-then" statement is found in a "definitions" clause or in a "coverage" clause or in a so-called "exclusion" or in the form of a "requirement" or anywhere else in the contract. As long as it represents something that must exist or be satisfied before the insurance company is responsible to defend or indemnify, an "if-then" statement in one part of a policy has equal status as a matter of logic with any other "if-then" clause in the policy. Thus, shifting an "if-then" statement from one part of the contract to another does not change the substantive logic of the total policy. Nor does this moving around of clauses justify relaxation of any equitable conditions the law may impose on certain of these conditions precedent.[4]

Indeed if placing a policy limitation in the "definitions" clause or the "coverage" clause rendered it immune from equitable constraints like the "notice-prejudice" rule, one could expect a rash of single clause insurance contracts—long, long, long clauses, I hasten to add—in which were packed all the exclusions, conditions, requirements, and the like which now are spread over the many paragraphs of the typical insurance contract.

I see no reason to treat a reporting requirement incorporated in the "definitions" clause or implied in the "coverage" clause of the instant insur-

---

[4] This does not mean it is entirely irrelevant where an "if-then" statement appears in a policy. Placement can affect how "obvious, plain and clear" it is. A limitation tucked away in an obscure location may be found unenforceable for that reason alone, even though it would be enforceable if located elsewhere in the policy.

ance contract any differently than if it were located elsewhere in the contract. Indeed another California court has specifically held a reporting requirement is governed by the notice-prejudice rule even though embodied in the coverage provision. (*Hanover Insurance Co.* v. *Carroll* (1966) 241 Cal.App.2d 558, 565 [50 Cal.Rptr. 704].) "[T]he [notice-prejudice] rule is applicable, even though compliance with the notice provisions is made a condition of the policy or specified as a condition precedent to the liability of the insurer. [Citations omitted.]" (241 Cal.App.2d at p. 565.) *Hanover* happened to involve an "occurrence and reported" policy rather than a "claims made and reported" policy. But the principle is the same. Like the court in *Northwestern Title Security Co.* v. *Flack, supra*, 6 Cal.App.3d 134, I see no reason to treat it any differently than if this requirement were in an "occurrence" policy.

Contrary to my colleagues, I see no grounds in reason or policy to exempt the reporting requirement in this particular insurance policy from the "notice-prejudice" rule. The purpose of this rule is to prevent insureds from losing coverage for claims made against them where the insurance company has not been prejudiced in its defense of the claim by the insured's failure to comply with the reporting requirement. Where the claim was actually made, that is the lawsuit filed, within the policy period the insurance company is no more prejudiced by a delayed reporting of the claim under a "claims made" policy than if the claim were belatedly filed under an "occurrence" policy.

Indeed the "tail" of filed but belatedly reported claims is apt to be quite narrow and very short. After all, the claim still must have been filed within the policy term. Claimants ordinarily have good reason to inform the insured as soon as possible after filing the lawsuit either by serving the complaint or beginning settlement negotiations. And, insureds, in turn, have every incentive to report any lawsuit to the insurance company as soon as they know of it. The potential "tail," such as it is, would consist of those rare cases in which the plaintiffs, for some unusual reason, delay a considerable time before either serving the summons and complaint on the defendant or notifying the defendant in some other way of the existence of the lawsuit so that they can begin negotiations about the claim. Even in these rare cases where service of process or some other form of notification is not effected immediately, it almost always will occur within a matter of a few weeks or months. At the most, in the worst case scenario, this "tail" would only extend for the two years within which a complaint must be served or be subject to dismissal. That is a far cry from the decades of possible exposure to hundreds and even thousands of late-discovered injuries which insurance companies must anticipate under "occurrence"-type policies and which motivated them to shift to the "claims made" variety.

The majority opinion also argues the "notice-prejudice" rule should not apply to this policy since the insured was given the option of purchasing—for a substantial additional premium—an extended period of coverage. This policy option has the effect of offering the possibility of coverage for claims "reported" during the subsequent year for "occurrences" that take place during the original policy term. However, the offering of this "additional" coverage for an additional premium supplies no *independent* logical support for the conclusion the "notice-prejudice" rule is inapplicable to "claims made" policies. Indeed only if we *assume* the notice-prejudice rule does *not* apply does the offered coverage have any meaning.

To illustrate the point, let us make the contrary assumption. That is, assume the "*notice-prejudice*" *rule does* apply to "claims made" policies. If so, the insured's rights under that rule are not something he or she is required to bargain for. If insureds pay an additional premium for the "opportunity" to *report* claims later than the policy ordinarily allows, they are paying for something the law already gives them *except where late reporting actually prejudices the insurer*. Thus, except in the situation of actual prejudice, they are paying for nothing. Surely, the failure to pay an additional sum for a legal right one already possesses cannot supply grounds for taking that right away. So in that instance, the insurance company's offer of nothing for something and the insured's rejection of that worthless offer is an irrelevancy.

What this all means, of course, is that we cannot infer anything about the "notice-prejudice" rule or its application to this "claims made" policy from Slater's decision against paying an additional premium for coverage of claims not reported during the initial policy period. It is a decision that may have consequences for Slater, but only if we first know whether the "notice-prejudice" rule indeed applies to "claims made" policies. The insurer's offer and the insured's rejection do not as a matter of logic have any consequences for the determination of whether the "notice-prejudice" rule extends to "claims made" insurance contracts.

The facts of the instant case present a compelling case for applying California's "notice-prejudice" rule. Here the delay in reporting the claim is not attributable to any laxity on the part of the insured in notifying the insurer about a claim the insured knew about. Instead, if the allegations of the complaint are proved to be true, the delay was the product of the insured's ignorance about the existence of the claim. The "notice-prejudice"

rule absolves insureds even when they are negligent or lazy. A fortiori, it should absolve them when they are diligent but unaware of a secret claim.

For the above reasons, I would reverse.