2005 OK CIV APP 44

ASSOCIATION OF COUNTY COMMISSIONERS OF OKLAHOMA, Self–Insured Group, Plaintiff/Appellant,

v.

NATIONAL AMERICAN INSURANCE COMPANY, Defendant/Appellee,

Chandler (USA), Inc., Chandler Insurance (Barbados), and Willis Corroon Administrative Services Corporation, Defendants.

No. 100,556.

Court of Civil Appeals of Oklahoma, Division No. 3.

June 1, 2005.

Gerard F. Pignato, Pignato & Cooper, P.C., Oklahoma City, OK, for Plaintiff/Appellant.

Joseph K. Goerke, Mulinix, Ogden, Hall, Andrews & Ludlam, Oklahoma City, OK, for Defendant/Appellee.

Opinion by KENNETH L. BUETTNER, Chief Judge:

¶ 1 Plaintiff/Appellant Association of County Commissioners of Oklahoma—Self–Insured Group (ACCO–SIG) sued Defendant/Appellee National American Insurance Company (NAICO) for breach of contract, fraud, and bad faith. The parties entered a settlement agreement in which NAICO paid damages of $1,250,000 to ACCO–SIG and the

parties agreed that ACCO–SIG was the prevailing party only for purposes of seeking fees and costs. The District Court denied ACCO–SIG's application for attorney fees, costs, and interest in the District Court.[1] The Oklahoma Court of Civil Appeals affirmed the denial of pre-judgment interest, but reversed the denial of attorney fees and remanded for determination of whether ACCO–SIG provided proper notice of its claims to NAICO to trigger application of 36 O.S.2001 § 3629. On remand, the District Court held that ACCO–SIG did not submit adequate proof of loss and again denied ACCO–SIG's request for attorney fees. ACCO–SIG appeals from the denial of fees on remand and the denial of ACCO–SIG's Motion to Reconsider. We affirm.

¶ 2 ACCO–SIG is part of an organization of county governments in Oklahoma. The parent organization assists Oklahoma counties with administrative matters. ACCO–SIG provides workers' compensation and liability insurance to member counties. The record shows that ACCO–SIG purchased excess insurance from Lloyd's of London from 1986 through June 30, 1995, when it began purchasing the same type of insurance from NAICO.[2] The parties agreed the NAICO policy was identical to the Lloyd's policy.[3] Beginning July 1, 1997, ACCO–SIG switched its policy to American Reinsurance. After that date, ACCO–SIG and NAICO disputed coverage on certain claims made by ACCO–SIG. ACCO–SIG ultimately sued NAICO for breach of contract, fraud, and bad faith. NAICO received summary judgment in its favor on the bad faith claim.

¶ 3 NAICO and ACCO–SIG signed a Settlement Agreement on the breach of contract claim in December 2001. The Agreement provided that NAICO would pay $1,250,000 to ACCO–SIG as consideration for a release

---

1. During the course of the litigation, the trial court entered partial summary judgment in favor of NAICO on the bad faith claim.

2. ACCO–SIG was self-insured for claims of up to $50,000. The excess insurance policy extended coverage from $50,000 up to $1,000,000. NAICO continues to assert its policy was re-insurance rather than excess insurance, but the Oklahoma Court of Civil Appeals has previously held

that the policy at issue was an excess insurance policy.

3. ACCO–SIG obtained partial summary judgment in its favor on this issue in an Order filed June 27, 2001. That order held that "the NAICO policy clearly and unambiguously adopts and incorporates the entire Lloyd's policy form, including the notice and reporting requirements therein."

of all claims except for attorney fees, costs, and interest. The Settlement Agreement provided, in pertinent part:

This release does not, however, include ACCO–SIG's claim for entitlement to attorney fees, costs, or interest directly related to ACCO–SIG's claims of fraud and breach of contract pending in the Litigation without an interlocutory determination at the time of this Agreement. NAICO denies ACCO–SIG is entitled to attorney fees, costs, and/or interest directly relating to the remaining claims. Therefore, the issue of entitlement to and amount of, if any, attorney fees, costs, and interest directly relating to the Litigation are to be determined by the Court upon application of ACCO–SIG pursuant to stipulations by the parties, with the right of appeal, interlocutory or otherwise, of such determination(s) by any aggrieved party. *For the purpose of making such application only, ACCO–SIG may be considered a prevailing party under statutes governing the consideration and/or award of fees, costs, and interest.* This Agreement, however, shall not be construed as creating any entitlement to attorney fees, costs, or interest. The parties agree and stipulate to the right of appeal from such determination(s).

(Emphasis added).

¶ 4 After the parties signed the Settlement Agreement, ACCO–SIG filed in the District Court its Application for attorney fees, costs, and interest based on 36 O.S.2001 § 3629.[4] The trial court denied the application March 4, 2002. ACCO–SIG appealed the denial. In Case No. 97,466, another division of the Oklahoma Court of Civil Appeals affirmed in part, reversed in part, and remanded the matter to the District Court.

¶ 5 In Case No. 97,466, the court first held that the fact the parties entered a settlement agreement did not bar application of Section 3629.[5] The court noted that ACCO–SIG's argument was that Section 3629 applied because ACCO–SIG gave notice of its claims, NAICO refused to pay, and the settlement included an agreement that ACCO–SIG was the prevailing party. The court further recognized NAICO's response, that Section 3629 did not apply because NAICO was a reinsurer of ACCO–SIG and Section 3629 is not applicable to reinsurance. The court determined that the NAICO policy at issue here was an excess insurance policy. NAICO's remaining argument against application of Section 3629 was that ACCO–SIG never submitted a formal proof of loss form, yet ACCO–SIG contended that the policy did not require formal proofs of loss, because the Lloyd's policy provided that liability claims would be paid when reported during the policy. ACCO–SIG argued that by adopting the coverage provided by Lloyd's, the notice which was acceptable to Lloyd's must be deemed acceptable to NAICO. NAICO had responded that the Lloyd's policy expressly prohibited ACCO–SIG from suing until 90 days after a proof of loss was submitted, and NAICO urged that a proof of loss was required but that ACCO–SIG failed to submit formal proofs of loss and also failed to make

4. That section provides:

A. An insurer shall furnish, upon written request of any insured claiming to have a loss under an insurance contract issued by such insurer, forms of proof of loss for completion by such person, but such insurer shall not, by reason of the requirement so to furnish forms, have any responsibility for or with reference to the completion of such proof or the manner of any such completion or attempted completion.

B. It shall be the duty of the insurer, receiving a proof of loss, to submit a written offer of settlement or rejection of the claim to the insured within ninety (90) days of receipt of that proof of loss. Upon a judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party. For purposes of this section, the prevailing party is the insurer in those cases where judgment does not exceed written offer of settlement. In all other judgments the insured shall be the prevailing party. If the insured is the prevailing party, the court in rendering judgment shall add interest on the verdict at the rate of fifteen percent (15%) per year from the date the loss was payable pursuant to the provisions of the contract to the date of the verdict. This provision shall not apply to uninsured motorist coverage.

5. For this holding the court relied on a Florida Supreme Court decision which held that where an insurer has agreed to settle a disputed case, the insurer has effectively declined to defend its position and the payment of the claim is the functional equivalent of a confession of judgment in favor of the insured. *Wollard v. Lloyd's and Companies of Lloyd's,* 439 So.2d 217 (Fla.1983).

requests for payment of some claims before it filed suit.

¶ 6 In its opinion in Case No. 97,466, the Court held that Section 3629(A) is not triggered by the submission of a proof of loss. The Court explained that Section 3629(A) is triggered by the "written request of any insured claiming to have a loss under an insurance contract issued by such insurer." The Court further explained that under the statute, once an insured makes a demand, the insurer is required to furnish a proof of loss form. Once the insured completes the form, the insurer has 90 days in which to make a written offer of settlement or rejection. If the insurer fails to act within 90 days, it has breached Section 3629(B) and has waived its right to attorney fees. The Court concluded that likewise, an insured may waive its right to attorney fees if it fails to submit a demand.

¶ 7 The Court of Civil Appeals held that it was unclear whether ACCO–SIG had submitted notice of its claims to NAICO. The matter was remanded to the District Court to make the factual determination whether ACCO–SIG had given notice of its claims to NAICO. The Court held that if the District Court found ACCO–SIG did give notice, then Section 3629 would apply and the District Court was then directed to determine the appropriate fee.[6]

¶ 8 Upon remand, the District Court again denied ACCO–SIG's Application for Attorney Fees. The District Court later denied ACCO–SIG's Motion to Reconsider. On appeal, ACCO–SIG argues the District Court erred in finding ACCO–SIG did not give NAICO proper notice of its claims sufficient to trigger the application of Section 3629.

¶ 9 The prior opinion of the Court of Civil Appeals is considered law of the case. The appellate court remanded the matter with specific instructions for the District Court to determine the fact issue of whether ACCO–SIG gave proper notice of a loss to trigger application of Section 3629. We review the trial court's decision on a question of fact to determine if it is supported by competent evidence.

¶ 10 As previously noted, partial summary judgment determined that the parties intended for the NAICO policy to be identical to the previous Lloyd's of London policy. The Lloyd's policy required ACCO–SIG to notify third-party administrator Willis Corroon Administrative Services Corporation whenever a claim was made against ACCO–SIG. Under the NAICO policy, ACCO–SIG continued to give notice of claims against it to NAICO through Willis Corroon.[7] The record clearly shows that before it filed this suit against NAICO, ACCO–SIG gave to NAICO only this type of notice—that ACCO–SIG members had been sued and therefore ACCO–SIG had potential claims under the excess insurance policy. The policy here gave NAICO the option of defending ACCO–SIG in claims made against it. The notice ACCO–SIG provided NAICO was the notice necessary for NAICO to determine whether to defend ACCO–SIG. The instant litigation does not involve NAICO's decision whether to defend ACCO–SIG.

¶ 11 The NAICO policy here was a claims made excess insurance policy. As noted above, the coverage applied only if claims made against ACCO–SIG members exceeded ACCO–SIG's $50,000 self-insured retention. Certainly ACCO–SIG notified NAICO that claims had been made against ACCO–SIG members (as noted above the timeliness of this notice was disputed). But, nothing in the record suggests that ACCO–SIG's liability in the claims made against it had been determined before ACCO–SIG filed suit against NAICO. Before final resolution of the claims against ACCO–SIG, there was no way ACCO–SIG could have known the extent of the excess insurer's liability in order to make a demand under the NAICO policy.

¶ 12 This court's prior opinion directed the District Court to determine if ACCO–SIG gave NAICO proper notice to trigger Section 3629. The Tenth Circuit Court of Appeals has indicated a key question in determining

---

6. The opinion affirmed the denial of pre-judgment interest.

7. There is some dispute about whether Willis Corroon then timely submitted these notices to NAICO.

whether Section 3629 has been triggered is what does the policy language (here the NAICO excess insurance policy) state is sufficient notice for ACCO–SIG to become entitled to policy coverage *and* to bring an appropriate action against NAICO if need be. *Stauth v. Natl. Union Fire Ins. Co. of Pittsburgh,* 236 F.3d 1260, 1262 (10th Cir.2001). *Stauth* involved a directors and officers liability policy included in a multiperil policy. The directors and officers liability provisions required only submission to the insurer of complaints filed against the directors and officers, and the directors and officers liability provisions were the only type of coverage in the multiperil policy for which no proof of loss was required. *Id.*

¶ 13 The General Provisions of the Lloyd's policy provided:

9. LOSS PAYMENTS:

When it has been determined that Underwriters are liable under this insurance, Underwriters shall thereafter promptly reimburse the Assured for all payments made in excess of the Self Insurance Retention stated in Part A (Specific Excess Agreement). All adjusted claims shall be paid or made good to the Assured within a reasonable time after the presentation to Willis Corroon Administrative Services Corp. and acceptance by Underwriters of satisfactory proof of interest and loss.

* * *

11. LITIGATION PROCEEDINGS:

No suit to recover on account of loss under this Insurance shall be brought until ninety days after the proof of loss shall have been furnished.

The NAICO policy's Self–Insured Retention Endorsement provides, in part,:

2. h. Whenever "you" have information from which "you" may reasonably conclude that a "occurrence" or series of related "occurrences" involving damages or claims which are likely to exceed "your" "self-retained limit", "you" will notify the company as required by the policy conditions. "You" will also notify the company if the "occurrence" or claim involves:

(1) Death;

(2) Dismemberment;

* * *

(11) Any other claim which might reasonably have a settlement value or verdict value equal to or greater than one half of "your" "self-retained limit":

(12) Claims in which the demands are in excess of the insured's "self-retained limit";

(13) Suits in which the prayers for damages, including any amendments thereof, are in excess of "your" "self-retained limit"; and

(14) Suits filed in federal court, whether or not proper service has been effected.

¶ 14 The notice which ACCO–SIG gave to NAICO, and which forms the basis of ACCO–SIG's attorney fees claim, is the type of notice outlined in the Self–Insured Retention Endorsement. That is, it was notice only that ACCO–SIG's members had been sued and that there was *potential* liability in excess of ACCO–SIG's self-insured amount. This notice may have been sufficient to put NAICO on notice that ACCO–SIG might possibly be entitled to benefits under the excess policy, but clearly such entitlement was not known because the underlying litigation against ACCO–SIG member counties was not completed. It is difficult to understand how ACCO–SIG could have been entitled to sue NAICO without first settling or litigating all of the claims against ACCO–SIG member counties to determine ACCO–SIG's liability and, consequently, determining whether the amounts ACCO–SIG owed to claimants exceeded the self-insured amount.

¶ 15 The Lloyd's and NAICO policies at issue in this case were "claims made policies." The "Public Officials Wrongful Acts Liability Insurance" policy states, in all capital letters at the top of the first page: "This is claims made policy, please read it carefully." The policy then includes the following provision on coverage:

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as compensatory money damages as a result of claims first made against the Insured and reported to the Company during the policy period by reason of any "wrongful act" committed by a

public official acting in his official capacity ... with respect to the following:

(a) bodily injury;

(b) property damage;

(c) personal injury;

And such "wrongful act" occurred or is alleged to have subsequent to the first day of the policy period (or the retroactive date, if any).

The policy defines "damages" as

a compensatory monetary judgment, award or settlement and does not include punitive or exemplary damages, ... nor the return or restitution of legal fees, costs and expenses arising therefrom.

◼ ¶ 16 In a claims made policy, coverage is triggered when an insured becomes aware of either claims against the insured or occurrences that might give rise to a claim against the insured and notifies the insurer of such a claim or occurrence during the policy period. *State, ex rel. Crawford v. Indemnity Underwriters Ins. Co.,* 1997 OK CIV APP 39, ¶ 4, 943 P.2d 1099.[8] In claims made policies, the date of notice is paramount—both the date the insured has notice of a claim against it and the date the insured forwards notice of that claim to the insurer. Because of the importance of the date of notice in a claims made policy, it has been held that the rule that late notice is acceptable where the insurer has not been prejudiced is inapplicable to claims made policies. *Crawford, supra,* at ¶ 8; *Slater v. Lawyers' Mutual Ins. Co.,* 227 Cal.App.3d 1415, 1423, 278 Cal.Rptr. 479 (1991). The *Slater* opinion explained that to apply the "notice-prejudice" rule to claims made policies would be to convert them to occurrence policies. *Id.* The court noted that claims made policies, which limit coverage specifically to cases where notice of the claim is given to the insurer during the policy period, developed to reduce the premium costs for liability coverage where the claim might not be known until years after an occurrence. *Id.* This cost

savings is lost if the notice-prejudice rule is applied to such policies. *Id.* Notice, of claims against the insured, which is required to trigger coverage in a claims made policy is simply not the same notice, of loss, required to trigger Section 3629.

◼ ¶ 17 In its prior opinion in this case, the Court of Civil Appeals noted that Section 3629 is triggered by notice from an insured "claiming to have a covered loss." The court remanded the matter to the District Court to determine if ACCO–SIG had given notice to NAICO that it had suffered a covered loss. The policy provides that NAICO will "pay on behalf of the Insured all sums *which the Insured shall become legally obligated to pay as compensatory money damages* as a result of claims first made against the Insured and reported to the Company during the policy period." (Emphasis added). And, as noted earlier, the self-insured retention provided that NAICO had the option, but not the duty, to defend ACCO–SIG. Accordingly, until such time as ACCO–SIG had become legally obligated to pay money damages in excess of the self-insured amount, and had given notice of that loss to NAICO, NAICO was without obligation—either to submit formal proof of loss forms or to make a settlement offer to ACCO–SIG. Absent these triggers, Section 3629 could not apply.

¶ 18 While ACCO–SIG may have purported to comply with the notice provisions of the policy by forwarding to NAICO the complaints made against ACCO–SIG members, ACCO–SIG did not submit proof of covered loss (formal or otherwise) to NAICO before filing suit. In its brief in this appeal, ACCO–SIG asserts that coverage automatically attached upon notice, of claims made against ACCO–SIG, to Willis Corroon and that "no special demand was required." This statement confuses the notice which is a condition precedent of *coverage* pursuant to the policy language, with notice of loss to trigger application of Section 3629—that is, notice that

---

8. Claims made policies are distinguished from occurrence policies. In an occurrence policy, coverage is triggered by a covered event occurring during the policy period. *Id.* at ¶ 5. In such policies, the date the insured learns of the occurrence and the date the insured provides notice of the covered occurrence to its insurer are not relevant. Property insurance is typically covered by occurrence policies because the covered event, damage to property, is distinct and usually immediately apparent.

ACCO–SIG had become legally obligated to pay amounts exceeding the self-insured retention.

¶ 19 Although notice of claims against ACCO–SIG was a policy-based condition precedent to coverage (in part because it gave NAICO the opportunity to exercise its option to defend), that notice alone gave NAICO no basis on which to make a settlement offer or reject the claimed loss. Only after ACCO–SIG became legally obligated to pay amounts in excess of the self-insured retention, and had notified NAICO of that loss, could NAICO be in position to offer to settle ACCO–SIG's claims. The plain language of Section 3629 shows the statute's purpose to encourage prompt settlement of claims, in part by offering prevailing party attorney fees. While a formal proof of loss form may not have been part of the course of dealing between ACCO–SIG and either Lloyd's or NAICO, nevertheless, a demand or notice of loss of an amount exceeding the self-insured retention was necessary for NAICO to be able to meet its Section 3629 obligation to made a settlement offer or reject the claimed loss (or risk an award of fees).

¶ 20 Deposition testimony of NAICO General Counsel Patrick Gilmore shows that NAICO acknowledged that the claims letters notified NAICO of claims made against ACCO–SIG. In reference to a letter from ACCO–SIG's claims manager to NAICO which detailed several claims, Gilmore stated "I think it probably has sufficient information to be report of a claim." But, Gilmore asserted NAICO's belief that a demand for payment of a specific amount is required to trigger application of Section 3629. Gilmore later indicated NAICO had "expressed (its) position that (it did not) believe there is coverage," but he asserted that the claims had not been denied officially because ACCO–SIG had not submitted formal demands. Indeed, deposition testimony from ACCO–SIG litigation manager Denny Butler shows that even two years after ACCO–SIG filed suit against NAICO, ACCO–SIG still had not determined whether the claims against its members would exceed the self-insured amount.

¶ 21 The Oklahoma Supreme Court has explained that under Section 3629, the insurer is a prevailing party where the judgment is for less than any settlement offer made by the insurer or where the insured rejects the claim and no judgment is awarded, while the plain language of the statute provides that "in all other judgments the insured shall be the prevailing party." *Shinault v. Mid–Century Ins. Co.*, 1982 OK 136, 654 P.2d 618, 619. *Shinault* states that the insured is the prevailing party when the insurer has rejected the claim and the insured recovers judgment. *Id.* And the statute provides for an award of fees to the prevailing party.

¶ 22 In this case, ACCO–SIG gave notice that claims had been filed against its members, but ACCO–SIG failed to give notice of a covered loss in *any* form, because the record indicates no loss covered by excess insurance had been determined at the time ACCO–SIG filed suit. Under Section 3629(B), the insured must give notice of a loss to the insurer: "(i)t shall be the duty of the insurer, receiving a proof of loss, to submit a written offer of settlement or rejection of the claim. . . . Upon a judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party." The prior opinion of the Court of Civil Appeals remanded the matter to the trial court to determine whether ACCO–SIG had so notified NAICO. Competent evidence supports the District Court's findings on the fact issue of whether ACCO–SIG had submitted proof of a loss sufficient to give rise to NAICO's statutory duty to make a settlement offer or risk paying prevailing party attorney fees. ACCO–SIG's notice that claims were pending against ACCO–SIG, while required to trigger coverage, was not sufficient to allow NAICO to comply with its Section 3629 duty to settle or reject the loss. Accordingly, Section 3629 was not triggered and the trial court properly denied ACCO–SIG's Application for Attorney Fees and Motion to Reconsider.

AFFIRMED.

JOPLIN, P.J., and HANSEN, J., concur.